1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

TERRY M.,

9

Plaintiff,

Case No. 23-5556 SKV

10

v.

11

COMMISSIONER OF SOCIAL SECURITY,

ORDER REVERSING THE
COMMISSIONER'S DECISION

12

Defendant.

13

14     Plaintiff seeks review of the denial of his application for Supplemental Security Income

15   (SSI).  Having considered the ALJ's decision, the administrative record (AR), and all

16   memoranda of record, the Court **REVERSES** the Commissioner's final decision and

17   **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. §

18   405(g).

19                                      **BACKGROUND**

20     Plaintiff was born in 1975, has a limited education, and has no past relevant work.  AR

21   42.  On September 28, 2020, Plaintiff applied for benefits, alleging disability as of September 10,

22   2020.  AR 35.  Plaintiff's applications were denied initially and on reconsideration, and Plaintiff

23

1    requested a hearing.  AR 116.  After the ALJ conducted a hearing on August 31, 2022, the ALJ

2    issued a decision finding Plaintiff not disabled.  AR 32-47, 63-85.

3                                    **THE ALJ'S DECISION**

4          Utilizing the five-step disability evaluation process,[1] the ALJ found:

5          **Step one**:  Plaintiff has not engaged in substantial gainful activity since September 28,
           2020.

6
           **Step two**:  Plaintiff has the following severe impairments: morbid obesity, congestive
7          heart failure, hypertension, lower extremity edema, anasarca, status post-leg fracture, left
           shoulder injury.

8
           **Step three**:  These impairments do not meet or equal the requirements of a listed
9          impairment.[2]

10         **Residual Functional Capacity**:  Plaintiff can perform light work except he can
           frequently reach in all directions with the left upper extremity and occasionally stoop,
11         kneel, crouch, crawl, and climb ramps and stairs.  He can never climb ladders, ropes, or
           scaffolds.  He can frequently work in extreme cold and occasionally work around moving
12         mechanical parts, but he can never work at unprotected heights.  He needs to change
           position between sitting and standing every 45 minutes for 5 to 10 minutes without being
13         off task.

14         **Step four**:  Transferability of job skills is not an issue because the Plaintiff does not have
           past relevant work.

15
           **Step five**:  As there are jobs that exist in significant numbers in the national economy that
16         Plaintiff can perform, Plaintiff is not disabled.

17   AR 37-38, 42.

18         The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

19   Commissioner's final decision.  AR 1-7.  Plaintiff appealed the final decision of the

20   Commissioner to this Court.  Dkt. 9.

21

22

23

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

1

**LEGAL STANDARDS**

2    Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

3    security benefits when the ALJ's findings are based on harmful legal error or not supported by

4    substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir.

5    2005).  As a general principle, an ALJ's error may be deemed harmless where it is

6    "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104,

7    1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to

8    determine whether the error alters the outcome of the case." *Id*.

9    Substantial evidence is "more than a mere scintilla.  It means - and means only - such

10   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

11   *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d

12   747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving

13   conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v.*

14   *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record

15   as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

16   Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

17   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

18   must be upheld.  *Id.*

19

**DISCUSSION**

20   Plaintiff argues the ALJ erred by misevaluating his testimony and insufficiently

21   developing the record.  The Commissioner argues the ALJ's decision is free of harmful legal

22   error, supported by substantial evidence, and should be affirmed.

23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 3

1    **A.      The ALJ Erred in Evaluating Plaintiff's Testimony**

2          Plaintiff testified that the primary symptoms preventing him from sustaining activity are

3    fatigue and swelling, specifically relating to his hands and feet.  Based on two function reports,

4    which Plaintiff completed a year before his hearing with the ALJ, the ALJ found: (1) "his

5    impairments affect squatting, bending, standing, walking, sitting, kneeling, climbing stairs, and

6    getting along with others;" (2) "he has trouble sitting and standing for long periods and [] his

7    legs and feet swell, making it hard to walk;" and (3) "he has trouble sleeping."  AR 39 (citing

8    AR 216-27, 246-53).  The ALJ found Plaintiff's testimony unpersuasive because it was "not

9    entirely consistent with the medical evidence and other evidence in the record."  AR 39.  Plaintiff

10   argues these reasons are not specific, clear, and convincing, as required in the Ninth Circuit.  *See*

11   *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014); *see also Laborin v. Berryhill*, 867

12   F.3d 1151, 1155 (9th Cir. 2017) (the ALJ must identify "*which* testimony [the ALJ] found not

13   credible" and explain "*which* evidence contradicted that testimony.").  The Court agrees.

14          *1.      Unremarkable Examinations*

15         The ALJ found Plaintiff's testimony unpersuasive because "he generally presented to

16   providers in no acute distress" and "physical, cardiovascular and pulmonary examinations were

17   largely unremarkable."  AR 39.  Plaintiff contends that the ALJ mischaracterized the evidence,

18   the exams are not "unremarkable," and most of the records the ALJ cited "describe the bilateral

19   lower extremity edema that prevents [him] from being on his feet longer than 15 minutes at a

20   time."  Dkt. 9 at 4.  The Commissioner argues that the ALJ was not required to include the

21   limitations related to fatigue and edema in Plaintiff's RFC because they "were at odds with the

22   clinical examinations during the period of adjudication, which failed to corroborate these

23   claims."  Dkt. 16 at 4.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 4

1    As to edema, as Plaintiff highlights in both briefs, nearly every record the ALJ relied on

2    presented signs for edema.  Dkt. 9 at 4; *see also* Dkt. 17 at 2.  First, eight of the ten treatment

3    notes the ALJ relied on included a finding that edema was present in Plaintiff's lower legs.  AR

4    39 (citing AR 517-18 (January 14, 2022; edema present); AR 517-18 (January 14, 2022; edema

5    present); AR 510 (January 21, 2022; edema present); AR 824 (January 28, 2022; edema present

6    – provider also noted that Plaintiff had "chronic stasis dermatitis and swelling of the lower

7    extremities bilaterally"); AR 792-94 (March 15, 2022; edema present); AR 790-92 (March 25,

8    2022; edema present); AR 783 (April 29, 2022; edema present); AR 779 (May 13, 2022; edema

9    present); AR 769-70 (June 3, 2022; edema present – Plaintiff directed to elevate his feet and

10   advised to only take compression socks off at night if feet remained elevated)).  That nearly

11   every record the ALJ cited as an example of an "unremarkable" finding corroborates Plaintiff's

12   edema is inexplicable.  The ALJ is required to explain why significant probative evidence has

13   been rejected.  *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  The ALJ found

14   Plaintiff had the severe impairment of lower extremity edema, AR 37, but failed to meaningfully

15   address the limitations it allegedly caused.  The fact that other findings in the record were normal

16   does not prove anything about Plaintiff's edema or relieve the ALJ of his duty to discuss it.  *See*

17   *Romo v. Astrue*, 2010 WL 3386448, at *4 (C.D. Cal. Aug. 26, 2010) (finding ALJ erred by

18   discounting edema related limitations; "swelling in Plaintiff's legs is not a subjective pain

19   symptom but an observable, medically documented physical condition that the ALJ was obliged

20   to assess and consider."); *see also Levin v. Schweiker*, 654 F.2d 631, 634-35, esp. 634 n. 7 (9th

21   Cir. 1981) (ALJ must make "full and detailed findings of fact" supporting ultimate determination

22   of disability).

23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 5

1          Second, the ALJ cited "normal findings" from an April 8, 2022, visit at a diagnostic

2     imaging center where Plaintiff received wound care treatment related to an abscess above his left

3     knee.  AR 39.   Here, Plaintiff was recorded with normal findings in a variety of categories,

4     including: (1) normal appearance and range of motion; (2) normal head, ears, eyes, and throat;

5     (3) normal focus, mental status, mood and affect, behavior, thought content, and judgment; and

6     (4) normal Pulmonary effort, heart rate, sound, and rhythm.  AR 785-86.  The first three groups

7     of findings would be relevant if Plaintiff opined preclusive issues related to disruptive behavioral

8     symptoms or abnormalities with his head, but that is not the case.  Moreover, while the record

9     describes some normal heart findings, a closer look undermines the ALJ's categorization of them

10    as "unremarkable."  The "normal" heart findings are not measured, described, or contextualized,

11    and heart issues were not material to the visit.  On the same page the ALJ cited, Plaintiff's

12    provider noted his prior medical history, specifically "DM2; heart disease; sleep apnea; [and]

13    obesity," contributed to his wound's "delayed healing."  AR 785.  The record is thus consistent

14    with Plaintiff's alleged limitations.

15          Finally, the ALJ cited a treatment note from July 27, 2021, where radiograph imaging

16    "showed [an] acromion fracture."  AR 39 (citing AR 415).  It is neither clear why the ALJ

17    considered a fractured shoulder an "unremarkable finding," nor obvious why such a finding

18    bears any nexus with Plaintiff's opined limitations.  In sum, none of the records the ALJ relied

19    on indicated "unremarkable findings" related to Plaintiff's edema.

20          As to fatigue, Plaintiff contends it is not a symptom that lends itself to qualitative

21    measurement and direct observation in a clinical environment.  Dkt. 17 at 2 (citing 20 C.F.R. §

22    404.1529(c)(2)-(3) (ALJ will not reject statements "solely because the available objective

23    medical evidence" does not substantiate it, severity of impairments may not always be shown

ORDER REVERSING THE COMMISSIONER'S
DECISION - 6

1    "by objective evidence alone."); *see also Beneke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004)

2    (ALJ erred by requiring objective evidence of fatigue caused, in part, by fibromyalgia, "sheer

3    disbelief is no substitute for substantial evidence.")).  The Commissioner contends the ALJ did

4    not err because Plaintiff "was consistently in no acute distress and fully alert and oriented," and

5    "routinely denied experiencing fatigue, swelling, malaise, disturbed sleep, weakness, or mental

6    status changes."  Dkt. 16 at 4-5.

7          In reviewing the ALJ's decision, the Court must rely on the reasons articulated by the

8    ALJ and may not fashion reasons on its own to affirm.  *Revels v. Berryhill*, 874 F.3d 648, 654

9    (9th Cir. 2017).  Here, the ALJ expressly acknowledged Plaintiff's testimony related to trouble

10   sleeping but failed to articulate any reason to discount that testimony.  The ALJ does not mention

11   or discuss "fatigue" at any point in his decision and makes only a single tangentially related

12   reference to Plaintiff's referral for sleep medicine.  AR 40.  Whether or not Plaintiff "routinely

13   denied experiencing fatigue," as the Commissioner contends, is irrelevant because the ALJ did

14   not articulate that as a reason to discount his testimony.

15         The Commissioner's reliance on *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999), is

16   inapt.  The Commissioner asserts the ALJ may discount testimony where the Plaintiff "did not

17   exhibit atrophy or any other physical signs of 'an inactive, totally incapacitated individual.'"

18   Dkt. 16 at 5.  In *Meanel*, the Ninth Circuit affirmed the ALJ's disposal of plaintiff's testimony

19   that "*she experienced constant pain that required her to lie in a fetal position all day* and

20   precluded her from performing virtually any type of work" because the ALJ noted there were no

21   physical signs corroborating that level of incapacity.  172 F.3d 1111 (emphasis added).  Here, the

22   Court is not presented with such extremes - Plaintiff opined that fatigue limited his ability to

23   work, not that he spends his days curled in a fetal position.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 7

1    Further, appearing in "no acute or apparent distress" is not inconsistent with Plaintiff's

2    allegations of waxing-and-waning symptoms.  *See Loretta S. v. Comm'r of Soc. Sec. Admin.*,

3    2020 WL 4559817, at *4 (D. Or. Aug. 7, 2020) (finding ALJ erred by relying, in part, on

4    treatment notes indicating "no apparent distress" to discount plaintiff's fatigue); *see also Sara O.*

5    *v. Comm'r of Soc. Sec. Admin.*, 2021 WL 4077781, at *2 (W.D. Wash. Sept. 8, 2021) (finding

6    ALJ erred, in part, by relying on normal presentation, strength, and range of motion to discount

7    plaintiff's fatigue).  The ALJ found Plaintiff "generally presented to providers in no acute

8    distress," AR 39; but the ALJ cited a single example, which simply noted Plaintiff "is

9    verbalizing. NAD." AR 351.  One example does not establish a pattern or fulfill the ALJ's

10   requirement to provide clear and convincing reasons for discounting Plaintiff's testimony. The

11   ALJ's cursory evaluation as to fatigue is thus unsupported by substantial evidence.

12       *2.    Activities of Daily Living*

13   In discounting Plaintiff's testimony, the ALJ found he engaged "in activities that are

14   consistent with the ability to perform light work." AR 41.  The ALJ made general findings about

15   Plaintiff's activities, but where the ALJ cited the record, it tends to support Plaintiff's testimony,

16   rather than contradict it.  Without more, mere reference to activities are not clear and convincing

17   reasons for discounting Plaintiff's testimony.  For the reasons discussed below, the ALJ erred by

18   misevaluating Plaintiff's testimony and activities of daily living.

19   The Ninth Circuit has repeatedly emphasized that "ALJ's must be especially cautious in

20   concluding that daily activities are inconsistent with testimony about pain, because impairments

21   that would unquestionably preclude work and all the pressures of a workplace environment will

22   often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759

23   F.3d 995, 1016 (9th Cir. 2014).  In *Smolen*, the Ninth Circuit found "many home activities may

ORDER REVERSING THE COMMISSIONER'S
DECISION - 8

1   not be easily transferable to a work environment where it might be impossible to rest periodically

2   or take medication." *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7. (9th Cir. 1996); *Fair v. Bowen*,

3   885 F.2d 597, 603 (9th Cir. 1989) (same).  Moreover, in *Reddick*, the Ninth Circuit stated that

4   people "should not be penalized for attempting to lead normal lives in the face of their

5   limitations." *Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998); *Vertigan v. Halter*, 260 F.3d

6   1044, 1050 (9th Cir. 2001) (a person carrying on with certain daily activities "does not in any

7   way detract from her credibility as to her overall disability.").  Finally, in *Garrison*, the Court

8   quoted with approval the Seventh Circuit's warning that the failure to differentiate between

9   activities of daily living, where a person has flexibility in scheduling and access to help, and

10  activities in a fulltime job, where they are held to a minimum standard of performance, was a

11  "recurrent, and deplorable feature of opinions by administrative law judges in social security

12  disability cases." *Garrison*, 759 F.3d at 1016 (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th

13  Cir. 2012)).

14          First, the ALJ found that Plaintiff "lives alone, performs his activities of daily living

15  independently, takes care of two dogs, does all household chores, and prepares complete meals

16  daily."  AR 41 (citing AR 216-27, 246-53).  However, the function reports the ALJ relied on

17  paint a different picture.  In the April 2021 report, Plaintiff marked "x" in response to a prompt

18  asking who he lived with, AR 216, and later explained that he lives in a "5th wheel" on a

19  campground where his "son lives next to me and helps" when home.  AR 219.  Plaintiff

20  indicated he prepared his own meals with a "microwave" but did not articulate what kind of

21  meals.  AR 218.  He also described doing "laundry once a week" and spending around ten

22  minutes a day cleaning up after his dogs.  AR 218.  Likewise, in Plaintiff's August 2021 report,

23  he reported that he lived alone but received frequent help from his son who lived next door.  AR

ORDER REVERSING THE COMMISSIONER'S
DECISION - 9

246-48.  He indicated he ate "complete meals" with his son on a daily basis but did not explain

what those meals were or how they were prepared.  AR 248.  Plaintiff also noted that he "can do

laundry and dishes" and indicated his "feet and hands swell up," preventing him from doing

more around the house.  AR 248.  Moreover, the medical records relied on by the ALJ

undermine his characterization of Plaintiff's level of independence.  *See* AR 769, 517, 779, 783,

790, 824, 785 (Plaintiff accompanied by a chaperone at seven of ten examples); AR 510, 415

(two records, no indication whether Plaintiff was alone or accompanied); AR 792

(cardiovascular consultation where provider did not physically examine Plaintiff).

Second, the ALJ found that Plaintiff walked "to exercise, to get from place to place, and

to pick up trash and talk with people at the campground where he lives."  AR 41 (citing AR 63-

85, 216-27, 246-53).  The ALJ's finding is an unreasonable mischaracterization of the Plaintiff's

testimony.  In April 2021, Plaintiff reported he could not "stand or sit for long periods," but

indicated he went outside daily and could walk approximately one-hundred yards before needing

to rest for "5 to 10 min."  AR 216-21.  Subsequently, in August 2021, Plaintiff indicated his legs

and feet would occasionally swell to the point that he could not walk, and reported he could not

walk more than fifty yards before he was required to rest for several minutes.  AR 246, 249.  He

also wrote that, after lunch, he would walk around for "a little" and "talk with people."  AR 247.

Further, during the hearing, Plaintiff told the ALJ that "after I stand for like 15 minutes or

anything like that, I have to sit down.  I have to move around because if I sit too long, I hurt…

and if I stand too long, my legs start swelling."  AR 73.  The ALJ asked him whether he

attributed his recent weight loss to his walking routine, but he testified that it was from the

medicine he was prescribed during an extended hospital stay for congestive heart failure (CHF).

AR 74.  After the ALJ asked whether he did any maintenance or work around the campground,

1   he said he would "walk around and pick up garbage when I'm doing my walks, things like that.

2   That way it doesn't look like I'm just sitting around not doing anything." AR 75. Finally,

3   Plaintiff testified that friends checked in on him but his son was his primary source of

4   socialization. AR 79. The ALJ's findings are thus inconsistent with the record.

5       Third, the ALJ found Plaintiff's alleged limitations unpersuasive because he drove,

6   shopped in stores, and managed his finances. AR 41 (citing AR 216-27, 246-53). Plaintiff's

7   alleged limitations are not related to handling money, so those findings are not material to the

8   disability evaluation. As to Plaintiff's driving, the ALJ relied on Plaintiff's function reports.

9   There, in each report, Plaintiff checked "x" in a form response to the prompt "do you drive?"

10  AR 217, 249. Neither report includes further context that would help evaluate Plaintiff's

11  limitations related to driving. Notably, during the hearing, the ALJ asked whether he used his

12  vehicle to "make [his] own appointments" and buy groceries. AR 77. Plaintiff replied, "yeah, I

13  have my doctor appointments all the time and everything." AR 77. He then talked about recent

14  medical appointments and the ALJ declined to follow-up with any driving questions. AR 77.

15  Concerning shopping, the function reports relied on by the ALJ indicate only that Plaintiff goes

16  shopping "once a month." AR 217, 249.

17      Finally, based on a treatment note from September 2021 where Plaintiff was treated for

18  wound drainage for a "motorcycle accident in July 2021," AR 767, the ALJ found Plaintiff "was

19  able to ride a motorcycle." AR 41. The ALJ emphasized the weight of this evidence, explaining

20  that riding a motorcycle "requires balance; hand-eye coordination; concentration; the ability to

21  pay attention to the road, traffic and signals; use of hands and feet to engage the clutch, shift and

22  brake." AR 41. If Plaintiff opined limitations because of issues with concentration, following

23  directions, fingering, or navigating traffic, then his alleged ability to ride a motorcycle could be

ORDER REVERSING THE COMMISSIONER'S
DECISION - 11

relevant.  Here, however, Plaintiff makes no such claims.  Rather, Plaintiff contends that his

inability to sit for more than fifteen minutes severely limits his ability to engage in substantially

gainful activities.  The treatment note does not shed light on how long Plaintiff would ride or

whether that would be relevant to his underlying claim, and the ALJ did not articulate this as a

reason for limiting the weight given to Plaintiff's testimony.  It was thus unreasonable for the

ALJ to rely on it as a basis for discounting Plaintiff's testimony.

In sum, living on a campground next to his son, microwaving meals, doing laundry once

a week, spending ten minutes a day picking up after his dogs, occasionally walking fifty to one-

hundred yards while chatting or picking up trash before requiring a break, going shopping once a

month, and attending medical appointments with chaperones are activities that cannot be said to

bear a meaningful relationship to the activities of the workplace.  For these reasons, the Court

finds that the ALJ did not give clear and convincing reasons for rejecting Plaintiff's testimony

regarding the severity of his impairments related to fatigue and edema.

### B.      The ALJ Erred in Developing the Record

An ALJ has a "duty to fully and fairly develop the record" and "assure that [a plaintiff's]

interests are considered."  *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014)

(citation omitted); *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.

2003) ("In making a determination of disability, the ALJ must develop the record and interpret

the medical evidence.").  But it nonetheless remains the plaintiff's burden to produce evidence in

support of his disability claim.  *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (as

amended).  Moreover, the "ALJ's duty to develop the record further is triggered only when there

is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

evidence."  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) (as amended May 19, 2011)

1   (citation omitted); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  An ALJ has

2   broad discretion in determining whether to order a consultative examination and may do so when

3   "ambiguity or insufficiency in the evidence ... must be resolved."  *Reed v. Massanari*, 270 F.3d

4   838, 842 (9th Cir. 2001) (citation omitted); *see also* § 404.1519a(b).  However, where the

5   plaintiff is unrepresented the ALJ must be "especially diligent," and a specific finding of

6   ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire.  *McLeod*,

7   640 F.3d at 886 (citation omitted).

8        Plaintiff contends the ALJ should have developed the longitudinal record further,

9   including medical evidence and testimony from the vocational expert and Plaintiff.  Dkt. 9 at 9-

10  11.  The Commissioner argues that the "ALJ's non-disability finding cleared the low substantial

11  evidence bar" because the ALJ's findings relied on "Plaintiff's generally benign clinical

12  findings, the documented effectiveness of his treatment, [his] testimony," and medical findings

13  from Norman Staley, M.D., a state agency medical consultant.  Dkt. 16 at 11-12.  However, as

14  discussed above, the ALJ's findings concerning Plaintiff's clinical signs and alleged limitations

15  are not supported by substantial evidence.  The Commissioner's argument that the ALJ was not

16  required to accept vocational expert testimony that was consistent with Plaintiff's testimony

17  similarly fails.  Furthermore, the ALJ did not articulate the effectiveness of Plaintiff's treatment

18  as a basis for finding him non-disabled,[3] and the Court must rely on the reasons articulated by

19  the ALJ and may not fashion reasons on its own to affirm.  *Revels*, 874 F.3d at 654.

20

21

22  [3] The ALJ made some general findings related to the effectiveness of treatment but did not articulate these
    as a reason for discounting Plaintiff's limitations.  AR 40 (hypertension "now better controlled with
    prescription medication," and that Plaintiff "was advised to eat a heart-healthy diet, exercise more, and
23  lose weight to help his heart, and cardiology is managing his symptoms.") (shoulder fracture treatment
    nonsurgical, referred to physical therapy) (treatment effective for Plaintiff's heart failure and skin ulcer);
    AR 41 ("chronic symptoms have been better controlled").

ORDER REVERSING THE COMMISSIONER'S
DECISION - 13

1    Next, the Commissioner argues that Plaintiff has not identified the "information he

2    wishes the ALJ had before deciding his claim… [and] Plaintiff cannot obtain rema[nd] merely

3    because he believes that even more medical and nonmedical evidence was out there" that could

4    lead to a different outcome.  Dkt. 16 at 13.   However, Plaintiff does not make this argument,

5    instead, Plaintiff contends the ALJ erred because the record was inadequate, ambiguous, and

6    lacked probative value for two primary reasons.  First, the record was not sufficiently developed

7    to reflect the impact CHF had on his impairments, and second, the ALJ's boilerplate finding that

8    he did not meet a Listed impairment was not a sufficient explanation.

9    As to the first point, Plaintiff argues that the ALJ erred by inserting "his own lay opinion"

10   without consulting "Dr. Staley, or indeed any cardiologist," about the effect of CHF on his

11   ability to function.  Dkt. 17 at 6.  To this point, Plaintiff notes the ALJ relied on Dr. Staley's

12   findings, which were completed before Plaintiff's CHF was diagnosed.  *Id.*  Further, Plaintiff

13   highlights that "NO doctor has assessed whether or not" his CHF "meets or equals a Listing, or

14   identified the functional limitations associated with this medical condition."  *Id.*  Plaintiff argues

15   this threadbare analysis is emblematic of the ALJ's review of the testimonial record, where the

16   ALJ: (1) declined to ask any follow up questions of Plaintiff's testimony related to swelling in

17   his legs; (2) declined to ask any questions about fatigue or sleeping during the day; and (3)

18   declined to ask the vocational expert questions about Plaintiff's need to elevate his legs due to

19   edema.  *Id.* at 7-8.  Likewise, rather than advising that Plaintiff obtain a statement from his

20   cardiologist or ordering the file reviewed again in light of the CHF diagnosis, the ALJ "omitted

21   the symptoms and limitations of [his] CHF from his RFC and made up his own requirements

22   with respect to the listing."  *Id.* at 7.  Plaintiff further highlights that "Social Security proceedings

23   are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop

ORDER REVERSING THE COMMISSIONER'S
DECISION - 14

1    the arguments both for and against granting benefits." *Id*. at 7 (citing *Sims v. Apfel*, 530 U.S.

2    103, 110-111 (2000); *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001)).

3         An overall review of the ALJ's decision shows that the ALJ failed to meet his duty to

4    develop the record.  Plaintiff was not represented by an attorney and the ALJ dismissed his

5    testimony without asking clarifying or follow-up questions related to his limitations.  The ALJ's

6    evaluation of Plaintiff's testimony was not supported with substantial evidence and the records

7    the ALJ cited contradicted his findings.  The ALJ also substantially relied on a medical opinion

8    completed before Plaintiff's CHF diagnosis.  In sum, the ALJ was not "especially diligent" in

9    developing the record and explaining his decision.

10        As to the second point, Plaintiff argues the ALJ failed to sufficiently develop the record

11   because the ALJ found that "the evidence shows no complications – such as dizziness,

12   retinopathy, stroke, heart attack, or end-organ damage – that rise to listing level," AR 38, which

13   are not elements of Listing 4.02.  Dkt. 17 at 6; *see also* 20 C.F.R. Part 404, Subpart P., App. 1. §

14   4.02.  A plaintiff bears the burden of demonstrating that his or her impairments meet a Listing

15   and that the twelve-month duration requirement is satisfied.  *Roberts v. Shalala*, 66 F.3d 179,

16   182 (9th Cir. 1995).  To meet a Listing, the claimant must "present medical findings equal in

17   severity to all the criteria for the one most similar listed impairment." *Kennedy v. Colvin*, 738

18   F.3d 1172, 1174 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

19   Nevertheless, an ALJ must evaluate and discuss the evidence adequately before concluding that a

20   claimant's impairments fail to meet or equal a Listing.  *See Lewis v. Apfel*, 236 F.3d 503, 512

21   (9th Cir. 2001) ("An ALJ must evaluate the relevant evidence before concluding that a

22   claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is

23   insufficient to support a conclusion that a claimant's impairment does not do so."); *Marcia v.*

ORDER REVERSING THE COMMISSIONER'S
DECISION - 15

1    *Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) ("In determining whether a claimant equals a listing

2    under step three ..., the ALJ must explain adequately his evaluation of alternative tests and the

3    combined effects of the listed impairments.").

4         Here, the ALJ's boilerplate statement that the record showed "no complications" is

5    insufficient to discharge his obligation to show the reasoning behind his determination.  The

6    ALJ's written decision does not articulate that the ALJ properly considered the paragraph A or B

7    criteria.  Furthermore, the ALJ's analysis and dismissal of those measurements is absent from his

8    discussion of the Listing, depriving this Court of meaningful review.  The ALJ also neglects to

9    evaluate other means by which Plaintiff could have met the Listing criterion.  Accordingly, the

10    Court cannot conclude the ALJ's failure to explain the Listing 4.02 evaluation was harmless

11    error.

12                                 **CONCLUSION**

13         For the reasons set forth above, the Commissioner's final decision is **REVERSED** and

14    this case is **REMANDED** for further administrative proceedings under sentence four of 42

15    U.S.C. § 405(g). On remand, the ALJ shall reevaluate Plaintiff's testimony, develop the record as

16    needed, and proceed to the remaining steps of the disability evaluation process as appropriate.

17         Dated this 13th day of February, 2024.

18

19

20                                S. KATE VAUGHAN

21                                United States Magistrate Judge

22

23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 16